Filed 6/20/13  P. v. Schimmel CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JAYSON MATHEAW SCHIMMEL,<br><br>  Defendant and Appellant. | 2d Crim. No. B235142<br>(Super. Ct. No. 2009008575)<br>(Ventura County)<br>ORDER MODIFYING OPINION AND<br>DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

IT IS ORDERED that the opinion filed herein on June 4, 2013, be modified as follows:

1.  On page 2, first paragraph, first sentence, delete the words "his stepmother" and in its place insert the words "a family friend."  On the same page, same paragraph, second sentence, change "Each time" to "On each occasion" and after the word "knee" add the words "when speaking with the police, he added that the impact was" so that the sentences read:

Within days of Steven's death, Schimmel admitted to a family friend
and to police that he had "killed [his] own kid."  On each occasion,

1

Schimmel explained that he had thrown Steven against his knee; when speaking with the police, he added that the impact was hard enough to hear the baby's head "pop."

2.  On page 4, first full paragraph, last sentence, after the words "Schimmel had" add the words "made statements regarding his knowledge and," and delete the words "indicated his" so that the sentence reads:

Those portions asked jurors whether they could return a verdict of not guilty if they felt guilt was not proven beyond a reasonable doubt, and invited their thoughts and opinions on the facts, including the fact that Schimmel had made statements regarding his knowledge and involvement in the killing.

3.  On page 8, first full paragraph, third sentence, after the word "trustworthiness" add the following text:

(Cf. *People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1069 [third-party testimony that defendant faced credible threats from third parties was relevant to self-defense and admissible under section 352].)

4.  On page 8, first full paragraph, at the end of the "*People v. Hernandez*" cite, add the following text:

We further reject Schimmel's contention that he is entitled to reversal because the trial court did not specifically rule on his due process-based request to admit his statements that we conclude was meritless.

5.  On page 9, second paragraph, last sentence, delete the word "stepmother" and replace it with the words "family friend" so the sentence reads:

Any error in excluding Hill's statements was harmless in any event because the notion that Schimmel confessed falsely at Hill's prompting is severely undermined by his nearly identical confession to his family friend the day *before* the pretext calls with Hill.

2

6.  On page 15, first full paragraph, last sentence, delete the words "evidentiary rulings" and replace them with the word "ruling" so the sentence reads:

Accordingly, there was no misconduct and no basis for a mistrial or to revisit the court's earlier ruling excluding Schimmel's prior recantations.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

Filed 6/4/13 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, <br><br>   Plaintiff and Respondent, <br><br> v. <br><br> JAYSON MATHEAW SCHIMMEL, <br><br>   Defendant and Appellant. | 2d Crim. No. B235142 <br> (Super. Ct. No. 2009008575) <br> (Ventura County) |

Jayson Matheaw Schimmel (Schimmel) was charged and convicted of physically abusing and ultimately killing his 10-week-old son. He now challenges his convictions and his prison sentence of 37 years to life. We affirm his conviction and sentence.

*FACTS AND PROCEDURAL HISTORY*

I. *The Crimes*

Steven Schimmel (Steven) was 10 weeks old when he suffered a "head trauma" that fractured his skull, caused bleeding on the brain and ultimately killed him. At the time of his death, Steven had 33 injuries to his ribs, 30 bruises, and over a dozen skin abrasions. Steven was a victim of "battered child syndrome."

Within days of Steven's death, Schimmel admitted to his stepmother and to police that he had "killed [his] own kid." Each time, Schimmel explained that he had thrown Steven against his knee hard enough to hear the baby's head "pop." Schimmel's account was consistent with the forensic evidence of Steven's injuries.

## II. *The Prosecution*

The grand jury indicted Schimmel for (1) assault on a child causing death (Pen. Code, § 273ab); (2) murder (Pen. Code, § 187; and (3) corporal injury to a child (Pen. Code, § 273d, subd. (a)). As to the corporal injury count, the indictment also alleged that Schimmel inflicted great bodily injury (Pen. Code, § 12022.7, subd. (d)). After a four-week trial, the jury returned guilty verdicts on all three charges and found the great bodily injury allegation true. The court imposed a sentence of 25 years to life on the assault count; imposed but stayed under Penal Code section 654 a sentence of 15 years to life on the murder count; and imposed a consecutive term of 12 years on the corporal injury count (comprised of 6 years on the underlying count and 6 years on the enhancement).

## DISCUSSION

### I. *Challenge to Voir Dire*

Schimmel argues that the trial court erred in excluding from the jury questionnaire two questions he proposed: (1) "Do you believe it is possible that a parent would, or could, falsely confess to engaging in violent physical conduct that resulted in the death of his or her infant child?"; and (2) "Are you open to the possibility the person might confess to a crime that he/she did not commit?" The trial court rejected the first question as "argumentative" and aimed at "preconditioning" the jury. The court rejected the second as argumentative because it "basically ask[s] the jury what do you think of this evidence." Because a trial court has "'great latitude in deciding what questions should be asked on voir dire'" (*People v. Earp* (1999) 20 Cal.4th 826, 852, quoting *Mu'Min v. Virginia* (1991) 500

2

U.S. 415, 424), we will affirm unless the court abused its discretion (*People v. Burgener* (2003) 29 Cal.4th 833, 865).

A criminal defendant has the right to ferret out juror bias through questioning. (*People v. Coffman & Marlow* (2004) 34 Cal.4th 1, 47.) This right has limits: Questions may neither be "so abstract" that they fail to root out bias (*ibid.*), nor "'"so specific' that they expose jurors to the facts of the case"'" (*People v. Carasi* (2008) 44 Cal.4th 1263, 1286) and thereby "'. . . indoctrinat[e] the jury on a particular view of the facts . . .'" (*People v. Sanders* (1995) 11 Cal.4th 475, 539). Because Schimmel's proposed questions are couched in terms of the jury's willingness to consider evidence that his confession was false, the trial court did not abuse its discretion in concluding that they were too specific and ran the risk of indoctrination.

Schimmel offers three reasons why his proposed questions were proper. First, he argues that trial courts must admit evidence bearing on a confession's reliability. (*Crane v. Kentucky* (1986) 476 U.S. 683, 689-690 (*Crane*).) This is true, but the admissibility of evidence is a different matter and subject to different standards than voir dire questioning.

Second, Schimmel contends that he is constitutionally entitled to ask jurors about their willingness to consider potential legal defenses. (*United States v. Allsup* (9th Cir. 1977) 566 F.2d 68, 70 [questioning regarding insanity defense].) This is also true, but Schimmel's proposed questions asked about evidence—not a legal defense.

Third, Schimmel asserts that he may ask questions aimed at assessing whether jurors will give any one fact controlling weight. The cases he cites do not support this broad proposition; to the contrary, they entitle a defendant to ask whether a jury will give controlling weight to a single aggravating factor during capital sentencing (see *People v. Cash* (2002) 28 Cal.4th 703, 720-721; *People v. Tate* (2010) 49 Cal.4th 635, 657-658), or to characteristics of the defendant

(*Aldridge v. United States* (1931) 283 U.S. 308, 310-313 [race]; *People v. Chapman* (1993) 15 Cal.App.4th 136, 141 [criminal history]).

Even if we read these cases more broadly, Schimmel's proposed questions do not ask whether jurors would give controlling weight to a defendant's confession. Instead, they attempt to measure a juror's willingness to consider proffered defense evidence; in so doing, they run a risk of indoctrination not present in the cases Schimmel cites. The danger that jurors might give a confession controlling weight was in any event likely to be revealed by other portions of the jury questionnaire. Those portions asked jurors whether they could return a verdict of not guilty if they felt guilt was not proven beyond a reasonable doubt, and invited their thoughts and opinions on the facts, including the fact that Schimmel had indicated his involvement in the killing.

## II. *Evidentiary Challenges*

### A. *Admissibility of Schimmel's prior exculpatory statements*

At trial, Schimmel testified that Steven's death was due to injuries suffered when his mother, Elizabeth Hill (Hill), accidentally fell while holding him. To bolster this testimony, Schimmel sought to introduce: (1) his statement to Detective William Hollowell, made on the day of Steven's death, that Schimmel "didn't want [Hill] to . . . trip and fall or whatevers to-to do any . . . anything else to the little guy" (Hollowell statement); (2) his statements to Hill, made during calls while Hill was working with police to elicit a confession from him the day after Steven's death, that Hill already knew what happened to Steven because she was present in the kitchen and that both of them "knew what was going on" (pretext calls); (3) his statements, made in letters to his mother a month after Steven's death and to another person a year after the death, that attribute Steven's death to Hill's accidental fall (letters); and (4) his statement, made to police a year after Steven's death, that recanted his prior confession (recantation). We review the trial court's exclusion of these statements for an abuse of discretion. (*People v. Jablonski* (2006) 37 Cal.4th 774, 805 (*Jablonski*).)

4

1. *Excited utterances*

Schimmel first argues that the Hollowell statement and the pretext calls qualify as excited utterances under Evidence Code section 1240.[1] Because these statements follow a startling occurrence (namely, Steven's death) and pertain to that occurrence, the sole issue is whether Schimmel's statements were a product of "'. . . the nervous excitement . . .'" caused by Steven's death and made "'. . . before there [was] time to contrive and misrepresent . . . .'" (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) The trial court's discretion is "' . . . at its broadest . . .'" in deciding this issue. (*People v. Lynch* (2010) 50 Cal.4th 693, 752, abrogated on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-638.)

Schimmel argues that that Hollowell statement qualifies under this exception because Schimmel said he was "exhausted" when he spoke with Hollowell and because the statement was made within 24 hours of Steven's death. Exhaustion is not excitement, and the timing is not enough by itself to convert Schimmel's statement into an excited utterance. Schimmel contends that the pretext calls qualify because (1) he was agitated during the calls; (2) they were within 48 hours of Steven's death; and (3) they were surreptitiously recorded. Schimmel's agitation during the calls was due to Hill's insinuation and questioning—not Steven's death. The timing is insufficient by itself. We also reject the notion that surreptitious recording bears on Schimmel's state of mind because Schimmel was unaware the calls were being recorded.

2. *State of mind exception*

Schimmel argues that his statements during the pretext calls alternatively qualify as statements of his then-existing state of mind under section 1250. The trial court rejected this argument.

A declarant's out-of-court statement regarding his "then-existing state of mind" (§ 1250, subd. (a)) is not barred by the hearsay rule if, in pertinent part:

---

[1] All statutory references are to the Evidence Code unless otherwise stated.

5

(1) "the declarant's state of mind . . . is itself an issue in the action" (*id.*, subd. (a)(1)); and (2) "the statement was made under circumstances such as to indicate its . . . trustworthiness" (§ 1252). Schimmel's statements do not meet these requirements. Most of Schimmel's statements on the calls pertain to what happened on the night of Steven's death; as such, they are not statements of his then-existing state of mind. Moreover, Schimmel's statements are not trustworthy because they are self-serving. (Cf. § 1230 [declarations *against* interest may be admissible].) They are not made more trustworthy, as Schimmel contends, because they were elicited at police direction because Schimmel was oblivious to police involvement.

### 3. *Use as impeachment evidence*

Schimmel further contends that the trial court erred in not admitting *all* of his prior statements to impeach his inculpatory confession under section 1202. The trial court excluded the prior statements under section 352. Because these statements would have been admitted solely for impeachment, the court reasoned that they had "limited probative value" that was outweighed by the significant danger that the jury would consider them for their truth despite any limiting instruction, which would have been prejudicial because they lacked trustworthiness.

Once a hearsay declarant's statement is admitted into evidence, section 1202 authorizes a court to admit any other inconsistent statements of that declarant as impeachment evidence. Section 1202 does not divest the court of its authority to exclude evidence under section 352. (*People v. Baldwin* (2010) 189 Cal.App.4th 991, 1005 (*Baldwin*).)

Schimmel attacks the court's section 352 analysis. He asserts that the court was wrong to say that his prior statements had limited probative value, to be concerned that jurors might not follow a limiting instruction, and to rely on the untrustworthiness of his prior exculpatory statements. The law is to the contrary. Statements admitted solely for impeachment have "limited probative value . . . ." (*Baldwin*, *supra*, 189 Cal.App.4th at p. 1005.) Although jurors are usually presumed able to follow limiting instructions (*Thomas v. Hubbard* (9th Cir. 2002)

6

273 F.3d 1164, 1172-1173, overruled on other grounds in *Payton v. Woodford* (9th Cir. 2003) 346 F.3d 1204), courts may consider the danger that jurors might not do so when considering the admissibility of evidence (*O'Gan v. King City Joint Union High Sch. Dist.* (1970) 3 Cal.App.3d 641, 645 (*O'Gan*); *People v. Riccardi* (2012) 54 Cal.4th 758, 823 [noting danger that evidence admitted for impeachment might be considered for its truth]).  And although a statement's trustworthiness is of no moment when it is admitted solely to impeach (*People v. Corella* (2004) 122 Cal.App.4th 461, 472), it remains relevant for the purpose of assessing any prejudice that would arise if the impeachment evidence were erroneously considered for its truth.

Because they do not affect the trial court's otherwise proper section 352 analysis, we need not consider Schimmel's additional arguments that the trial court erroneously equated section 1202 with the exception for prior inconsistent statements, and also improperly narrowed its evidentiary rulings as the trial proceeded.

4. *Constitutional overrides*

Schimmel alternatively argues that he has a federal constitutional right under due process to introduce all of his prior statements, and that this right overrides the rules of evidence.  As a general matter, a defendant has no constitutional right to present all relevant evidence in his favor.  (*People v. Babbitt* (1988) 45 Cal.3d 660, 684 (*Babbitt*).)  Put differently, the rules of evidence usually "'. . . do not impermissibly infringe on the accused's right to present a defense. . . .'" (*People v. Jones* (1998) 17 Cal.4th 279, 305, quoting *People v. Hall* (1986) 41 Cal.3d 826, 834.)  Consequently, courts may ordinarily exclude evidence after weighing its probative value against any unfair prejudicial effect.  (E.g., *Holmes v. South Carolina* (2006) 547 U.S. 319, 326-327; *Babbitt*, *supra*, at pp. 684-685.)

However, there are instances in which due process and other constitutional guarantees trump the rules of evidence.  States may not bar entire categories of evidence.  (See *Chambers v. Mississippi* (1973) 410 U.S. 284,

7

300-301 (*Chambers*) [due process overrides state rule precluding cross-examination of codefendants]; *Rock v. Arkansas* (1987) 483 U.S. 44, 55-56 [due process overrides state rule precluding all hypnotically refreshed testimony]; see also *Washington v. Texas* (1967) 388 U.S. 14, 23 [Sixth Amendment right of compulsory process overrides state rule precluding testimony by accomplices].) Nor may states apply their rules of evidence in a particular case to exclude evidence that has "significant probative value" (*Babbitt*, *supra*, 45 Cal.3d at p. 684) and "persuasive assurances of trustworthiness" (*Chambers*, *supra*, at p. 302). (See also *People v. Reeder* (1978) 82 Cal.App.3d 543, 552-553 (*Reeder*); *People v. Anderson* (2012) 208 Cal.App.4th 851, 880; see *Georgia v. Green* (1979) 442 U.S. 95, 96-97 [denial of due process to exclude as hearsay a codefendant's statement taking all responsibility for charged crime].)

The trial court's exclusion of Schimmel's prior exculpatory statements did not violate the Constitution. The trial court did not rely on any categorical bar. The court's application of the hearsay rule and section 352 also did not result in the exclusion of evidence of significant relevance or assured trustworthiness. Evidence admitted solely for impeachment is, as noted above, of marginal probative value. Even if admitted for their truth, Schimmel's self-serving statements laying the blame for Steven's death on others lacks the "persuasive assurances of trustworthiness" necessary to override the rules of evidence. (See *People v. Lightsey* (2012) 54 Cal.4th 668, 716 [no due process right to introduce defendant's prior exculpatory statements]; cf. *People v. Hernandez* (1977) 70 Cal.App.3d 271, 279 [evidentiary error to preclude questioning of witnesses who provided entirely innocent explanation of defendant's otherwise suspicious conduct].)

B. *Admissibility of Hill's statements during pretext calls*

Schimmel asserts that the trial court erred in excluding Hill's statements during the pretext calls for the nonhearsay purpose of explaining why Schimmel falsely confessed to the police the next day. An out-of-court statement admitted to prove that a person heard that statement, believed it and acted on it, is

not admitted for its truth and is not hearsay.  (*Holland v. Union Pacific R. Co.* (2007) 154 Cal.App.4th 940, 947; *People v. Roberson* (1959) 167 Cal.App.2d 429, 431; *People v. Duran* (1976) 16 Cal.3d 282, 295 & fn. 14.)  To be admitted, however, such statements must be relevant.  (§ 350.)

Schimmel argues that he believed Hill's statements on the calls, and acted on those statements by falsely confessing to protect her.  This argument is not supported by the record.  The transcript of those calls indicates that Hill implored Schimmel to tell her the truth about what happened with Steven so they could "get [their] stories straight" when questioned by police.  Her statements do not have any tendency in reason to prove that Schimmel, on the basis of Hill's statements, would then confess *falsely*.  (§ 210.)  The disconnect between Hill's statements and Schimmel's subsequent confession is confirmed by Schimmel's reaction to Hill's entreaties during the pretext calls:  He refused to tell Hill anything and was palpably hostile to her requests.  The trial court accordingly did not abuse its discretion or otherwise violate Schimmel's constitutional rights in excluding Hill's statements.  Any error in excluding Hill's statements was harmless in any event because the notion that Schimmel confessed falsely at Hill's prompting is severely undermined by his nearly identical confession to his stepmother the day *before* the pretext calls with Hill.

C. *Admissibility of Schimmel's prior acts of domestic violence*

Schimmel challenges the trial court's ruling admitting evidence of his prior acts of domestic violence against Hill and Steven as (1) evidence of his disposition to engage in such acts, under section 1109; and (2) evidence of his intent, motive, lack of mistake or accident, and knowledge that his acts were dangerous to human life, under section 1101, subdivision (b).  In particular, Schimmel argues that the trial court violated the Constitution and otherwise abused its discretion in admitting evidence that he:  (1) endangered Hill by driving erratically while angry with Hill—once by driving at excessive speed and another time by driving away while a then-pregnant Hill was still getting into the car and

9

then braking so hard that her abdomen hit the dashboard; (2) angrily kicked in the door of his home while Hill was inside; (3) called Hill a "whore" and told her he would rather have the as-yet-unborn baby dead than have Hill as its mother; (4) "played" with Steven by squeezing his kneecaps and stomach until the baby cried; (5) told Hill not to call 9-1-1 when Steven went limp after gagging while in Schimmel's sole custody; and (6) throwing DVD containers at Steven when Steven's crying angered him. (*Jablonski*, *supra*, 37 Cal.4th at p. 805 [abuse of discretion review].)

The constitutional validity of section 1109 is long settled. (E.g., *People v. Brown* (2011) 192 Cal.App.4th 1202, 1233, fn. 14 (*Brown*).) Schimmel gives us no reason to revisit the issue.

The trial court also did not abuse its discretion in admitting these prior acts under either sections 1109 or 1101, subdivision (b). Schimmel does not dispute that these acts qualify as acts of "domestic violence" under section 1109 or are otherwise valid "other act[s]" under section 1101. Instead, he challenges the trial court's assessment—under both sections—that the probative value of the prior acts was not substantially outweighed by likelihood that admission of this evidence would necessitate an undue consumption of time, or create a substantial danger of undue prejudice, of confusing the issues or of misleading the jury. (§§ 352, 1109, subd. (a)(1) [admissibility turns on § 352 analysis]; *People v. Foster* (2010) 50 Cal.4th 1301, 1328-1329 [admissibility under § 1101, subd. (b), turns in part on § 352 analysis].)

None of Schimmel's section 352-based challenges has merit. He argues that other acts evidence "mislead" the jury into believing that Steven's death was not accidental and thereby put him in a "bad light." Evidence contrary to a defendant's theory is not, for that reason alone, "misleading" or "und[uly] prejudicial." (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138 ["'In applying section 352, 'prejudicial' is not synonymous with 'damaging'"], quoting *People v. Karis* (1988) 46 Cal.3d 612, 638.) Schimmel also contends that the other acts were

10

more inflammatory than the charged crimes because Steven's quick death caused Steven less suffering than the other, longer-term abuse Schimmel inflicted. We do not agree that Schimmel's other acts—which ranged from erratic and dangerous driving to throwing DVDs to squeezing Steven's body—are more inflammatory than the act of breaking Steven's shoulder or throwing his head hard enough against a kneecap to crack his skull and kill him. Schimmel lastly argues that the trial court erred in failing to recognize how time consuming it would be to introduce these other acts. The testimony took little time, however. For these reasons, the trial court did not act in an "arbitrary, capricious, or in a patently absurd" manner in conducting its section 352 analysis. (*Brown*, *supra*, 192 Cal.App.4th at p. 1233.)

D. *Limits on the impeachment of Hill*

Schimmel contends that the trial court abused its discretion and violated his due process and confrontation rights by not allowing him to cross-examine Hill on six different topics. Invoking section 352, the trial court prohibited cross-examination of Hill regarding: (1) Hill's allegedly false complaint to Child Protective Services that her parents had abused her (because the agency's files were confidential, because the agency's conclusion that the complaint was "unfounded" did not mean it was false, and because the complaint had limited probative value); (2) Hill's allegedly false statement, when requesting relocation fees, that her mother and brother had threatened her (because it would unduly consume time); (3) Hill's conviction of theft from her former employer, the details of that theft, and that she falsely told the police she had quit (because a judgment of conviction for an infraction is hearsay and because it was duplicative of questions Schimmel would be allowed to ask Hill about the theft); (4) Hill's alleged drinking and dancing soon after Steven's death (because it was "improper opinion" and excludable under section 352); (5) Hill's discussion of putting Steven up for adoption (because Schimmel also wanted to do so, rendering the statement more prejudicial to Schimmel than probative of Hill's motives); and (6) Hill's allegedly false testimony to the grand jury that she only got car rides from Schimmel (because proof that Hill

11

occasionally got rides from others did not "do anything to impeach her credibility" and would unduly consume time).

Schimmel challenges the trial court's exercise of discretion in excluding these areas of inquiry. Citing *Andrews v. City & County of San Francisco* (1988) 205 Cal.App.3d 938, he argues that the trial court's concern about undue consumption of time to prove the falsity of various areas was misplaced. *Andrews* held that concerns about "'mini trials'" did not justify the *total* preclusion of cross-examination on the subject of an alleged assault victim's other assaultive conduct. (*Id.*, at p. 947.) Because, as discussed below, the trial court allowed Hill to be impeached on a variety of topics, including prior false statements, *Andrews* is not controlling. Schimmel also argues that the trial court did not appropriately assess the probative value of the excluded areas of impeachment. But the trial court explained why the Child Protective Services report, discussions about adoption, and the car rides did not demonstrate falsity or were otherwise far removed from the charged crimes. Indeed, Schimmel acknowledges that these topics were "somewhat collateral." Impeachment on collateral matters "reduces its probative value and increases the possibility that it may prejudice or confuse the jury." (*People v. Lavergne* (1971) 4 Cal.3d 735, 742.)

Schimmel also claims that the trial court's restrictions on cross-examination violated his constitutional rights. A defendant's Sixth Amendment right of confrontation encompasses the right to impeach a witness through cross-examination. (*Davis v. Alaska* (1974) 415 U.S. 308, 315-316.) However, "not every restriction on a defendant's desired method of cross examination is a constitutional violation." (*People v. Frye* (1998) 18 Cal.4th 894, 946 (*Frye*), overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390.) Trial courts retain a "'wide latitude'" to restrict defense cross-examination under section 352. (*People v. Quartermain* (1997) 16 Cal.4th 600, 623; *People v. Whisenhunt* (2008) 44 Cal.4th 174, 207.) Limitations on cross-examination accordingly violate the confrontation clause only if they "would have produced 'a significantly different

12

impression of [the witness's] credibility.'  [Citation.]"  (*Frye*, *supra*, at p. 946, quoting *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680.)

Schimmel raises essentially two arguments.  First, he argues that he is entitled to the "maximum opportunity" to impeach Hill.  For support, he cites *United States v. Williams* (9th Cir. 1981) 668 F.2d 1064, 1070, and *United States v. Frankenthal* (7th Cir. 1978) 582 F.2d 1102, 1106.  These cases are distinguishable on their facts, and do not purport to pronounce the absolute rule Schimmel asserts.  We will not read them to be inconsistent with United States Supreme Court and California precedent.

Second, Schimmel contends that the prohibited areas of impeachment would have altered the jury's perception of Hill's credibility.  We disagree.  The trial court recognized Schimmel's basic right to impeach Hill with evidence relevant to her character for truthfulness.  On that basis, the court allowed cross-examination regarding (1) Hill's prior fall while holding Steven, including her failure to mention it to the police until specifically asked; (2) Hill's accidental injury of Steven's knee; (3) Hill's normal bath routine for Steven, which could be viewed as inconsistent with her account to police of what happened the night of Steven's death; (4) Hill's assertion that she fed Steven before his death although the autopsy revealed that his stomach was empty; (5) Hill's false statements to police that Steven had received pre- and post-natal medical care; (6) Hill's statement that she felt she may have hurt Steven; (7) Hill's assertion that she "dislocated" her hip during Steven's birth, which medical evidence did not support; (8) Hill's complaints about the baby and how his care consumed her life; (9) Hill's theft from her prior employer; and (10) Hill's unsent letter to Schimmel urging him to deny playing roughly with Steven so Schimmel could be released from custody and back home with her.  Given the breadth of this cross-examination, the trial court's limitations did not cast Hill in a "significantly different" light.  For the same reasons, the trial court's rulings did not violate due process by unduly restricting Schimmel's right to present a defense.  (Cf. *Reeder*, *supra*, 82 Cal.App.3d at pp. 552-553.)

13

### III. *Prosecutorial Misconduct Challenges*

### A. *Misleading closing argument*

Schimmel argues that the prosecutor engaged in misconduct that warranted either a mistrial or the reopening of evidence. Schimmel notes that the prosecutor argued, in closing, that Schimmel's recantation on the witness stand was a "new story." Schimmel contends that this argument is misconduct because the prosecutor was suggesting that Schimmel had never previously recanted while knowing full well that Schimmel had. Schimmel asserts that the prosecutor was unfairly taking advantage of the trial court's exclusion of those earlier recantations. The trial court agreed with Schimmel that it would have been misconduct for the prosecutor to expressly or implicitly argue that Schimmel's trial testimony was the first time he had professed innocence, but found that the prosecutor did not so argue. Schimmel claims this ruling is an abuse of discretion under state law and a violation of due process. (*People v. Ayala* (2000) 23 Cal.4th 255, 283-284 (*Ayala*).)

Regardless of subjective intent, a prosecutor commits misconduct under state law if he or she uses "deceptive or reprehensible methods to attempt to persuade either the court or the jury. [Citation.]" (*People v. Strickland* (1974) 11 Cal.3d 946, 955; *People v. McKinzie* (2012) 54 Cal.4th 1302, 1326.) When attacking a prosecutor's remarks to a jury, a defendant must show a "'. . . reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. . . .' [Citation.]" (*People v. Gurule* (2002) 28 Cal.4th 557, 657, quoting *Frye*, *supra*, 18 Cal.4th at p. 970.) We do not lightly infer that the jury drew the most damaging meaning. (*Ibid.*) A prosecutor violates federal due process only if his comments are "'". . . 'so egregious that [they] infect[] the trial with such unfairness as to make the conviction a denial of due process.'"' (*Ayala*, *supra*, 23 Cal.4th at pp. 283-284, quoting *People v. Ochoa* (1998) 19 Cal.4th 353, 427.)

The trial court did not abuse its discretion or otherwise err in rejecting Schimmel's claim of misconduct. Even though the prosecutor referred to

14

Schimmel's testimony as a "new story," the prosecutor argued it was "new" vis-à-vis the testimony recounting Schimmel's confessions—not "new" because it was the first time Schimmel had ever proffered innocence. Nor is there a reasonable likelihood that the jury misconstrued his argument. Accordingly, there was no misconduct and no basis for a mistrial or to revisit the court's earlier evidentiary rulings excluding Schimmel's prior recantations.

B. *Failure to disclose exculpatory evidence*

Schimmel also argues that the prosecutor unconstitutionally withheld material impeachment information regarding Hill. (See *Brady v. Maryland* (1963) 373 U.S. 83, 87 (*Brady*); *Giglio v. United States* (1972) 405 U.S. 150, 153-154.) In a post-judgment motion for a new trial, Schimmel asserted that Hill had perjured herself when, prior to trial, she had applied to the Victim Compensation Board (Board) for relocation expenses. Specifically, Schimmel notes that her sworn application to the Board lists the first month's rent and security deposit as totaling $1,629, while the documentation from the apartment complex totaled $910 (reflecting a pro-rated rent due to a mid-month move-in date and a credit for her rental application deposit). Among other things, the trial court rejected Schimmel's claim that any discrepancy was impeachment material. We review this ruling de novo, but give great weight to any trial court findings of fact supported by substantial evidence. (*People v. Letner & Tobin* (2010) 50 Cal.4th 99, 176.)

A prosecutor violates federal due process if he suppresses exculpatory evidence, including evidence used to impeach a government witness if that evidence has a reasonable probability of altering the outcome of the proceeding. (*Brady*, *supra*, 373 U.S. at p. 87; *Kyles v. Whitley* (1995) 514 U.S. 419, 433.) We agree with the trial court that the two forms do not reflect duplicity and are therefore not impeachment material. The application form required an estimate of the first month's rent and the security deposit; the different total on the apartment complex's form reflects nothing more than a pro-rating of the first month's rent due to a mid-month move-in date. Schimmel argues that the apartment gave Hill a

15

$1,000 credit (presumably rendering a $629 balance due); although the apartment complex's form contains such a notation, that notation is struck out and the form's total of $910 confirms that the $1,000 credit was never applied. Schimmel also argues that the trial court improperly ruled that it would have excluded this impeachment evidence under section 352. (Cf. *People v. Hoyos* (2007) 41 Cal.4th 875, 919-920 [impeachment material admissible at joint trial must be disclosed to all defendants], overruled on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 641.) However, the trial court's comment in this respect is irrelevant because it does not affect the propriety of its ruling that this information is not impeachment material.

IV. *Instructional Challenges*

A. *Pinpoint Instructions*

In appropriate circumstances, a trial court is required to give a requested jury instruction that "'. . . pinpoints the defense theory of the case . . .'" unless that instruction "'. . . incorrectly states the law, is argumentative, duplicative [of other instructions], or potentially confusing [citation], or if it is not supported by substantial evidence [citation].'" (*People v. Moon* (2005) 37 Cal.4th 1, 30.) We independently review jury instructions. (*People v. Posey* (2004) 32 Cal.4th 193, 218 (*Posey*).)

1. *False confession instruction*

Schimmel challenges the trial court's refusal to give the following portion of his proposed pinpoint instruction on false confessions: "As with any other part of the prosecution's case, a confession of the defendant may be shown to be insufficiently corroborated or otherwise unworthy of belief. You are at liberty to disregard any confession that is insufficiently corroborated or which you deem unbelievable or unreliable. [¶] In determining the believability or unreliability of the defendant's confession, consider any evidence of the circumstances surrounding the defendant's interrogation, together with any factors that may have influenced defendant in making such statements. [¶] If you determine that the confession of a

16

given act is false, you cannot consider the confession as tending to prove commission of the acts." The trial court ruled that this language impermissibly embodied "the thrust of [the defense] argument," but noted that Schimmel remained free to argue these points using the other instructions.

Schimmel raises two challenges to this ruling. First, he contends that his proposed instruction is a proper pinpoint instruction. He argues that it correctly reflects the holding of *Crane*, *supra*, 476 U.S. 683. *Crane* holds that courts may not exclude evidence bearing on the reliability of a confession; it says nothing about jury instructions.

Schimmel also disputes the trial court's conclusion that his proposed instruction is duplicative and argumentative. The instruction is duplicative because jurors were elsewhere instructed that they are "the exclusive judges as to whether the defendant made a confession or admission, and if so, whether the statement is true in whole or in part," and that they may not convict Schimmel based on his out-of-court statements alone without some corroboration. The proposed instruction is also argumentative. An instruction is argumentative if it "recites facts drawn from the evidence in such a manner as to constitute argument to the jury in the guise of a statement of law . . . [or] invite[s] the jury to draw inferences favorable to one of the parties from specified items of evidence. . . .' [Citation.]" (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1244, quoting *People v. Lewis* (2001) 26 Cal.4th 334, 380.) The proffered instruction calls the jurors' attention to particular items of evidence—namely, evidence offered by Schimmel to show why he confessed and the circumstances of his confession. What is more, it does so in a lopsided manner that tells the jury it may *discredit* his confession on that basis, but does not inform them that they may *credit* the confession for these reasons.

Second, Schimmel argues that he has a constitutional right to insist that the jury be instructed on his theory of the defense. (*People v. Bolden* (2002) 29 Cal.4th 515, 558 (*Bolden*).) But a false confession is not itself a theory of defense; instead, it is evidence supporting a defense of mistaken identity. Schimmel's

17

instruction accordingly falls outside of this constitutional imperative. (Cf. *People v. Wilson* (1967) 66 Cal.2d 749, 762 [instruction on legal defense of unconsciousness required]; *People v. Adrian* (1982) 135 Cal.App.3d 335, 340-341 [instruction on legal defense of self-defense required]; *United States v. Garner* (6th Cir. 1976) 529 F.2d 962, 969-970 [instruction on legal defense of coercion required]; *People v. Sedeno* (1974) 10 Cal.3d 703, 715-716, overruled on other grounds in *People v. Blakeley* (2000) 23 Cal.4th 82, 89; *People v. Breverman* (1998) 19 Cal.4th 142, 163, fn. 10, 165; *People v. Flannel* (1979) 25 Cal.3d 668, 684-684, fn. 12 [instruction on legal defenses of unconsciousness and diminished capacity required], superseded on other grounds by Penal Code § 28; *Bradley v. Duncan* (9th Cir. 2002) 315 F.3d 1091, 1097-1098 [instruction on legal defense of entrapment required]; e.g., *Conde v. Henry* (9th Cir. 2000) 198 F.3d 736, 739-740 [instruction on lesser-included offenses required].) Schimmel's proposed instruction also does not relate reasonable doubt to any element of the three charged crimes. (*Bolden*, *supra*, at p. 558.)

The trial court's refusal to give Schimmel's instruction is in any event harmless because he was not precluded from arguing the falsity of his confession. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144-1145.) Schimmel contends that the right to argue is not enough, but the cases he cites deal with instructions on "'. . . basic constitutional principles that govern the administration of criminal justice . . .'" or other principles on which a trial court is obligated to instruct sua sponte. (*Carter v. Kentucky* (1981) 450 U.S. 228, 303-304 [no adverse inference from defendant's decision not to testify]; *People v. Vann* (1974) 12 Cal.3d 220, 226-227 & fn. 6 [beyond a reasonable doubt and presumption of innocence]; *People v. Newton* (1970) 8 Cal.App.3d 359, 377-378 [defense of unconsciousness; duty to instruct sua sponte]; *United States v. Bernard* (9th Cir. 1980) 625 F.2d 854, 857-858 [accomplice testimony; duty to instruct sua sponte].) Pinpoint instructions fall outside this rule.

B. *Instructions regarding Hill's consciousness of guilt*

Schimmel asserts that that the trial court erred in declining to instruct the jury that false statements and suppression of evidence by Hill may show her "consciousness of guilt," which could raise a reasonable doubt regarding Schimmel's guilt. The trial court rejected Schimmel's proffered instructions as argumentative and duplicative.

The trial court's ruling was correct for two reasons. First, a witness's consciousness of guilt is not relevant, and instructions similar to Schimmel's have been rejected. (*People v. Hartsch* (2010) 49 Cal.4th 472, 500-501.) Schimmel cites *People v. Hannon* (1977) 19 Cal.3d 588, 596-600, disapproved on other grounds in *People v. Martinez* (2000) 22 Cal.4th 750, 762, and *People v. Boyette* (2005) 29 Cal.4th 381, 438-439, but those cases involve the defendant's consciousness of guilt. Second, Schimmel's proposed instructions are duplicative of the general witness credibility instructions. The credibility instruction already informs jurors that they may reject a witness's testimony, and that they should consider whether that testimony is "influenced by a factor such as bias or prejudice," whether the witness has made prior inconsistent statements, and whether the witness has "engaged in other conduct that reflects on . . . her believability." As the trial court noted, this instruction covered all of Schimmel's attacks on Hill's credibility due to her alleged false statements and suppression of evidence. For these same reasons, any instructional error is harmless.

C. *Accomplice instruction*

For the first time on appeal, Schimmel argues that the trial court erred in not instructing the jury that it must determine whether Hill was an accomplice to his crimes, and if she is, that her testimony must be rejected unless corroborated. A trial court is obligated to give such an instruction on its own if substantial evidence supports a finding that a witness could be held liable as perpetrating or aiding and abetting any of the charged crimes. (Pen. Code, § 1111; *People v. Felton* (2004) 122 Cal.App.4th 260, 263, 268-269 (*Felton*); *People v. Tobias* (2001) 25 Cal.4th

19

327, 331.)  We review this claim de novo.  (*People v. Alvarez* (1996) 14 Cal.4th 155, 218.)

Schimmel contends that Hill is liable as an accomplice for corporal injury to Steven and for his death because she did not stop his abuse.  A witness's refusal to act can make her an accomplice if (1) the crime itself may be committed through negligence (*Felton*, *supra*, 122 Cal.App.4th at pp. 268-269 [accomplice instruction required for child endangerment crime when witness did nothing to stop serious and long-standing abuse]); or (2) the witness knows of the defendant's criminal purpose and takes no action with the intent or purpose of facilitating the defendant's crimes (see *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 742-745 [defendant liable as an aider and abettor for watching while defendant molested her daughter]; *People v. Rolon* (2008) 160 Cal.App.4th 1206, 1219 [defendant, with the requisite knowledge and intent, liable as an aider and abettor for not removing her child from an abusive perpetrator]).  Absent the requisite mental states, however, inaction is not enough.  (*People v. Lewis* (2004) 120 Cal.App.4th 837, 850 [spouse who did not prevent abuse not an accomplice].)  There is no evidence—let alone substantial evidence—that Hill, while knowing of Schimmel's intent to physically injure Steven, idly stood by with the intent of facilitating that abuse.  Hill saw Schimmel yell at, poke and squeeze Steven, and inferred that Schimmel threw DVD containers at Steven; her decision not to take action in response to these acts does not imply that she knew of Schimmel's more serious physical abuse or acted with the intent to facilitate Schimmel's infliction of the more serious injury and death charged in this case.

Even if the trial court should have given this instruction, its omission was harmless because there was sufficient evidence to corroborate Hill's testimony.  (*Felton*, *supra*, 122 Cal.App.4th at pp. 271-272.)  Here, the forensic medical evidence and Schimmel's multiple confessions far surpassed the "slight" degree of corroboration required.  (*Ibid.*)

20

D. *Flight instruction*

Schimmel argues that the trial court erred in giving the following instruction: "If the defendant fled, *or acted with the purpose of avoiding observation*, immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that defendant fled *or acted with the purpose of avoiding observation*, it is up to you to decide the meaning and importance of that conduct. However, that conduct cannot prove guilt by itself." (Italics added.) We review the propriety of this instruction de novo. (*Posey*, *supra*, 32 Cal.4th at p. 218.)

Schimmel contends that this instruction is erroneous for two reasons. First, he argues that the italicized portions depart from the standard flight instruction in Penal Code section 1127c. But departing from the verbatim statutory language is not error by itself. (E.g., *People v. Hill* (1967) 67 Cal.2d 105, 120.)

Second, Schimmel asserts that the instruction is not supported by substantial evidence. (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1245.) A flight instruction is appropriate only if (1) the defendant has departed from the crime scene or from the police (*People v. Sanchez* (1939) 35 Cal.App.2d 231, 237; *People v. Kessler* (1968) 257 Cal.App.2d 812, 814, fn. 2); (2) under circumstances indicating the movement was motivated by a consciousness of guilt (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055 (*Bradford*)). Schimmel argues that his movement from the main house where paramedics and police were treating Steven on the night of Steven's death to the guest house where he lived did not constitute "flight" because Schimmel was moving *to* the crime scene and did not leave in a manner that evinced a consciousness of guilt.

The propriety of a flight instruction in this case is a close question. Schimmel's movement to the crime scene was also a movement away from the police. However, retreat to one's home is usually not flight unless the circumstances of the retreat support an inference of consciousness of guilt. (*Bradford*, *supra*, 14 Cal.4th at p. 1055.) The People argued that Schimmel left the

21

main house to avoid questions, but Schimmel testified that he left the main house because it was crowded and the evidence indicates that Schimmel cooperated with police later that night. We need not resolve the propriety of the instruction, however. The instruction was "manifestly harmless" because it left it entirely to the jury to decide if the evidence showed a consciousness of guilt. (*People v. Crandell* (1988) 46 Cal.3d 833, 870, overruled on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365; *People v. Watson* (1977) 75 Cal.App.3d 384, 403.)

Third, Schimmel cites *Francis v. Franklin* (1985) 471 U.S. 307, 314-325, for the proposition that that the instruction violates due process. *Francis* deals with an instruction creating a mandatory rebuttable presumption; the flight instruction here did no such thing.

## V. *Cumulative Error*

Schimmel argues that the case against him was a credibility contest between himself and Hill, and that the trial court's many erroneous rulings collectively tipped the balance in the People's favor. Because we conclude that the trial court committed no prejudicial error, there is no error to cumulate. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1064.)

## VI. *Sentencing Challenges*

A. *Staying the corporal injury count*

Schimmel argues that the trial court was required under Penal Code section 654 to stay the corporal injury count (count 3) because that crime was part of the same "'course of conduct deemed to be indivisible in time . . .'" as the assault causing death and murder counts (counts 1 and 2). (*People v. Ramirez* (2006) 39 Cal.4th 398, 478; *Neal v. State of Cal.* (1960) 55 Cal.2d 11, 19, overruled on other grounds in *People v. Sanders* (2012) 55 Cal.4th 731 (*Neal*).)

Abuse against a victim that stops when the victim dies does not always constitute part of the same course of conduct as the act causing death. What matters is whether the offense were "incident to one objective" (*Neal*, *supra*, 55 Cal.2d at p. 19), which hinges in part on how the case is pled and proven. (E.g.,

22

*People v. Evers* (1992) 10 Cal.App.4th 558, 602-604 [child endangerment count based on conduct two months prior to murder not part of same "course of conduct"]; *People v. Northrop* (1982) 132 Cal.App.3d 1027, 1044, disapproved on other grounds in *People v. Smith* (1984) 35 Cal.3d 798 [child abuse and felony murder based on separate acts not part of same "course of conduct"]; *People v. Assad* (2010) 189 Cal.App.4th 187, 200 [torture and aggravated mayhem against same victim but based on different acts not part of same "course of conduct"].)

In this case, the People pled the corporal injury count as ending the day before Steven's death, and at trial confined the corporal injury count to the injury that Schimmel inflected on Steven's left shoulder one to four weeks before Steven's death. The jury was required to agree unanimously on which act constituted the corporal injury.[2] Given the People's limitation of the corporal injury count and the resulting unanimous verdict, the trial court properly found that the injury to Steven underlying the corporal injury count was distinct from the injury causing death.

B. *Amount of restitution*

Schimmel argues that the trial court erred in awarding restitution to the Board for Hill's relocation expenses of $1,629. We review this claim for an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.)

There was no abuse here. The amount paid by the Board is presumed to be correct, and Schimmel has not rebutted that presumption. (Pen. Code, § 1202.4, subd. (f)(4).) Schimmel contends that Hill only incurred expenses of $910—not $1,629. There was no overpayment. The Board provided one month's rent and Hill received that amount. The fact that first day of Hill's rental started in

---

[2] In passing, Schimmel challenges the unanimity instruction, but it was not erroneous. Moreover, this instruction is what rendered the trial court's Penal Code section 654 ruling valid.

23

the middle of a month, and thus resulted in a lesser, pro-rated rent amount for that first month, does not mean that Hill was paid for more than 30 days of rent.

*DISPOSITION*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

HOFFSTADT, J.[*]

We concur:

YEGAN, A. P. J.

PERREN, J.

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Patricia M. Murphy, Judge

Superior Court County of Ventura
_____

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.